UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER R. SEAMON, | : | CIVIL NO: 3:23-CV-00543 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| JOSH SHAPIRO, *et al.*, | : | |
| Defendants. | : | |

**ORDER**
November 14, 2023

## I. Introduction.

Plaintiff Peter R. Seamon ("Seamon") brings claims against 20 defendants for oppressing him and depriving him of his right to due process. After screening Seamon's complaint, we conclude that it fails to state a claim upon which relief can be granted. We will, however, grant Seamon an opportunity to amend his complaint.

## II. Background.

Seamon commenced this action pro se by filing a complaint on March 29, 2023. *Doc. 1.* Additionally, Seamon filed an application to proceed *in forma pauperis*. *Doc. 2.* We granted his application and advised that we would conduct a preliminary review prior to serving the complaint. *Doc. 6.*

The complaint identifies 20 defendants. *Doc. 1.* Nine of the defendants named in the complaint are, or during the events delineated in the complaint were, Commonwealth employees: (1) Governor Josh Shapiro ("Governor Shapiro"); (2) Attorney General Michelle A. Henry ("AG Henry"); (3) Assistant Attorney General Julia K. Hearthway ("Assistant AG Hearthway"); (4) Secretary of Labor & Industry Nancy Walker ("Secretary Walker"); (5) Department of Labor & Industry attorney Eric Preputnick ("Attorney Preputnick"); (6) Judge Patrick J. Cummings ("Judge Cummings"); (7) Judge Joseph Grady ("Judge Grady"); (8) Commissioner of the Workers' Compensation Appeals Board Thomas P. Cummings, Jr. ("Commissioner Cummings"); and (9) Chairman of the Workers' Compensation Appeals Board Alfonse[1] Frioni ("Chairman Frioni"). *Id.* at 5–7. Four of the defendants are private attorneys: (1) James E. Pocius ("Attorney Pocius"); (2) Ross Corrazza ("Attorney Corrazza"); (3) Jennifer T. Callahan ("Attorney Callahan"), (4) Gerald Butler ("Attorney Butler"). *Id.* at 7, 8. And Seamon names the law firm Marshall, Dennehey, Warner, Coleman & Goggin ("Marshall Dennehey") as a defendant. *Id.* at 7, 8. Seamon also names Genex Services, LLC ("Genex") as a defendant. *Id.* at 8. Additionally, Seamon names as

---

[1] Seamon is inconsistent in how he identifies this defendant, writing "Alfonse Frioni" in the caption and the body of the complaint, but writing "Alfonso Frioni" when identifying the defendants. *See* doc. 1 at 1, 7, 18, 20. We will adopt the spelling convention Seamon follows most often.

defendants Penn Millers Insurance Company ("Penn Millers") and Penn Millers employee Marcy Marra ("Marra"). *Id.* Last, Seamon names (1) Elmer Kenneth Acker ("Acker"), (2) Patrick J. McLaine ("McLaine"), and (3) Margaret McLaine ("Margaret") as defendants. *Id.* at 4, 5. All three of these defendants are associated with Acker Associates, Inc. ("Acker Associates"). *Id.* at 4, 5. Acker and McLaine are the owners of Acker Associates, and Margaret is an employee. *Id.* at 4, 5.

Seamon's complaint details an alleged conspiracy that dates back approximately 20 years, and, in many respects, the complaint is convoluted and confusing. *See generally id.* Accordingly, we summarize only those facts relevant to Seamon's claims as we understand them. Seamon bases his claims on his belief that employees of the Commonwealth conspired with several private citizens to "destroy evidence, manipulate the official records, engage in mail and wire fraud in the undertaking, resulting in the creation and maintenance of an ongoing insurance fraud, racketeering association in fact." *Id.* at 3. According to Seamon, the defendants are utilizing private investigators to "follow and harass" him.[2] *Id.* Because Seamon fails to provide a clear chronological summary of the alleged

---

[2] We are unsure at whom Seamon directs this allegation. Seamon specifically names Penn Millers and Genex as being involved in the harassment (*doc. 1* at 8), but elsewhere in the complaint Seamon admits that he is unsure of the people directing the harassment (*doc. 1* at 30).

events underlying the case, the following more specific factual allegations may be out of order.

Seamon's allegations stem from a workers' compensation claim against his former employer, Acker Associates. *Id.* at 9.  Seamon alleges that Judge Grady went into a secure online court system and erased evidence Seamon had uploaded. *Id.* at 10.  Seamon intended to introduce the erased evidence at an unspecified hearing. *Id.*  According to Seamon, he discovered, from a "partial answer to [a] Right to Know Request[,]" that Judge Grady was the person who had erased the evidence he had uploaded. *Id.* at 14.  Additionally, Seamon claims someone erased all litigation history related to his workers' compensation claim.[3] *Id.* at 11.

Seamon believes Judge Grady erased the evidence he had uploaded to protect Judge Cummings from being deposed. *Id.* at 18.  Seamon appears to allege that Judge Cummings has been engaged in a pay-to-play scheme with Acker Associates. *Id.*  According to Seamon, this is evidenced by a "Notice of Reassignment" from March 8, 2006, that gave Judge Cummings the power to hear all cases involving Acker Associates. *Id.*  Seamon claims, however, that this "Notice of Reassignment" was among the evidence allegedly erased by Judge Grady. *Id.*  Seamon alleges that he became a victim of this pay-to-play scheme

---

[3] Although Seamon claims that Judge Grady was responsible for the erasure of the uploaded evidence, it is unclear from Seamon's complaint who Seamon claims was responsible for erasing the litigation history. *Doc. 1* at 10, 11, 14.

when he lost his workers' compensation case against Acker Associates due to Judge Cummings' alleged bias. *Id.*

Seamon further claims that Judge Cummings and Attorney Pocius "slander[ed]" him to an attorney Seamon had hoped to retain. *Id.* at 24. The rest of Seamon's complaint focuses on explaining how all of the defendants are intertwined. *See generally id.* at 3–32. He makes several claims regarding a conspiracy, many of which relate to different defendants allegedly aiding Judge Cummings in the alleged fraudulent decisions he issues, most of which have no bearing on Seamon. *See generally id.* We will avoid attempting to explain Seamon's convoluted theory of a conspiracy happening in the state government. Even supposing Seamon's alleged facts are true, many of them have no bearing on his claims nor do they cause him injury.

On the first page of the complaint, Seamon lists his claims as follows:

> 42 U.S.C. § 1983, Depravation
> of Civil Rights Under Color of
> Law, Conspiracy, Racketeering,
> Insurance Fraud, Obstruction
> Official Oppression
> Harassment, Invasion of Privacy

*Id.* at 1 (line breaks and commas in original). Liberally construing the complaint, "depravation of civil rights under color of law," "obstruction[,]" and "official oppression" are properly brought pursuant to 42 U.S.C. § 1983. Considering Seamon's references to "conspiracy," "insurance fraud," "harassment," and

5

"invasion of privacy[,]" however, we cannot determine the causes of actions he brings. Additionally, in the body of the complaint, Seamon claims that conspiracy," "racketeering," "insurance fraud," Attorney Pocius and Judge Cummings slandered him. *Id.* at 24. This appears to be a state law defamation of character claim, which would fall within the court's supplemental jurisdiction.

According to Seamon, this ordeal has caused him to suffer psychological and emotional injuries. *Id.* at 32. Additionally, Seamon seeks compensatory damages to be determined by a jury both for his time spent preparing for litigation and his lost compensation. *Id.* Seamon also requests $150,000,000 of punitive damages. *Id.*

### III. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This court has a statutory obligation to conduct a preliminary review of complaints brought by plaintiffs proceeding *in forma pauperis*. Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915(e), which provides, in pertinent part:

> **(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> . . .
> **(B)** the action or appeal—
> . . .
> **(ii)** fails to state a claim on which relief may be granted . . . .

6

This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). "[A] court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due

merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). Thus, "[c]ourts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Id*. Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**IV. Discussion.**

Liberally construing Seamon's complaint, we nevertheless conclude that it fails to comply with Fed. R. Civ. P. 8. We assume factual assertions contained within the complaint are true, but we are under no obligation to do so with legal conclusions that lack factual support. Rather than containing simple, concise, and direct factual allegations, the complaint instead consists of legal conclusions and grand leaps in logic when connecting defendants to one another in an alleged conspiracy.

Further, Seamon's complaint utterly fails to provide fair notice of the claims and the grounds upon which they rest. As described above, the complaint is confusing—not only to the court but, presumably, to the defendants to whom fair notice is required. Many defendants are not mentioned in the complaint aside from their identification as defendants. *See generally doc. 1*. One particular defendant's

relation to the case is confined to a marital relationship with another defendant. *Id.* at 5. And it is unclear which claims are asserted against which defendants.

Seamon's complaint thus fails to comply with the pleading requirements of the Federal Rules of Civil Procedure and, accordingly, fails to state a claim upon which relief can be granted. Moreover, as discussed in more detail below, many of the claims identified in the complaint cannot be brought against many of the defendants.

## V. Leave to Amend.

Before dismissing a complaint under the screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). Here, in light of the liberal-amendment standard, although this screening analysis calls for dismissal of the complaint, Seamon should be granted another opportunity to comply with the requirements of Fed. R. Civ. P. 8 and attempt to state a claim upon which relief can granted. Thus, we will grant Seamon an opportunity to correct the deficiencies noted above by filing an amended complaint. For Seamon's benefit, we will briefly note some additional pleading standards with which he must comply in filing an amended complaint.

9

### A. Amended Complaint Requirements.

Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). Seamon "is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id.* "Also in general, an amended pleading—like [any] amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017). In other words, if an amended complaint is filed, the original complaint will have no role in the future litigation of this case.

### B. Federal Rule of Civil Procedure 8.

Seamon's complaint must comply with the pleading requirements of Fed. R. Civ. P. 8. Federal Rule of Civil Procedure 8 requires, among other things, that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction"; "a short and plain statement of the claim showing that the pleader is entitled to relief"; and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(1), 8(a)(2), 8(a)(3). Rule 8 also requires that each allegation in a complaint "must be simple, concise,

and direct." Fed. R. Civ. P. 8(d)(1). "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests.'" *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93). The "complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

### C. Federal Rule of Civil Procedure 10.

The complaint must also comply with Fed. R. Civ. P. 10, which provides, among other things, that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And to the extent it would promote clarity to do so, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*.

### D. Section 1983 Claims.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). To establish a claim

under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct.

Seamon asserts the defendants obstructed his right to justice. We interpret this to be a due process claim relating to his workers' compensation case. The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, §1. "The core concept of due process is protection against arbitrary government action," and due process has "both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011).

"The requirement that the government afford due process of law to the entities and individuals with whom it deals applies only in situations in which the governmental action implicates some protected life, liberty, or property interest of the entity or individual." *Fantone v. Latini*, 780 F.3d 184, 188 (3d Cir. 2015). Thus, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). If the interest is one that

is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

### E.  Racketeering Influenced and Corrupt Organizations Act.

Seamon appears to bring racketeering claims which fall under the Racketeer Influenced and Corrupt Organizations Act.  18 U.S.C. § 1962, which sets forth the activities prohibited by the RICO statute, contains four subsections.  The prohibitions in these subsections "concern not only patterns of racketeering activity but also the collection of unlawful debt." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 330 n.1 (2016).  Because this case does not implicate a debt, the four subsections of § 1962 "can be summarized as follows" with respect to racketeering activity:

> Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise.  Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity.  Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity.  Finally, § 1962(d) makes it unlawful to conspire to violate any of the other three prohibitions.

*Id*. at 330 (footnote omitted).

RICO defines "racketeering activity" to include "a host of so-called predicate acts" listed in 18 U.S.C. § 1961(1). *Bridge v. Phoenix Bond & Indem.*

13

*Co.*, 553 U.S. 639, 647 (2008).  These predicate acts include "dozens of state and federal offenses." *RJR Nabisco*, 579 U.S. at 330.  "A predicate offense implicates RICO when it is part of a 'pattern of racketeering activity'—a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *Id*.  A "pattern of racketeering activity requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5).

### F.  Judicial Immunity.

Claims against judges can be brought in their individual or official capacities.  When a claim is brought against a judge in his or her official capacity, that claim may fail due to Eleventh Amendment immunity.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978); *see also Benn v. First Judicial Dist. Of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component.  From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551

F.3d 193, 198 (3d Cir. 2008) (concluding that "as an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity," but holding that in that case, the Eleventh Amendment was waived by acceptance of federal funds under the Rehabilitation Act).

The Eleventh Amendment, however, does not bar claims against state officials in their individual or personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991). But absolute judicial immunity may apply as well. *See Yarris v. County of Delaware*, 465 F.3d 129, 134–35 (3d Cir. 2006). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). A two-part inquiry is used to determine whether judicial immunity is applicable. *Gallas*, 211 F.3d at 768. First, because immunity applies only to actions taken in a judge's judicial capacity, a determination must be made whether the challenged actions of the judge were taken in his or her judicial capacity. *Id.* "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* "Generally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (quoting *Barnes v. Winchell,* 105 F.3d 1111, 1122 (6th Cir. 1997)); *see also Gallas*, 211 F.3d at 771 (holding that "a judge does not act in the clear absence of all jurisdiction when the judge enters an

15

order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint required another judge to act in the matter").

### G.  Eleventh Amendment Immunity.

Nine of the defendants Seamon names in the complaint are employees of the Commonwealth.  Seamon is suing many of those defendants both in their individual and official capacities.  The Eleventh Amendment may bar some of Seamon's claims against some of these Commonwealth employees in their official capacities.

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)

16

(quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id*. It serves those interests by barring suits against the nonconsenting states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (stating that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.[4]  First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

### H.  State Sovereign Immunity.

To the extent Seamon intends to bring claims against the defendants under state law, we note that sovereign immunity bars state claims against the Commonwealth, its agencies, and its employees acting within the scope of their duties. *See* 1 Pa. Cons. Stat. Ann. § 2310.  Pennsylvania law waives sovereign immunity in nine limited circumstances.  These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts

---

[4]  Additionally, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993).

involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b).  The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand,* 681 A.2d 1322, 1326 (Pa. 1996).

**VI.  Order.**

Based on the foregoing, **IT IS ORDERED** that Seamon is **GRANTED** leave to file an amended complaint on or before **December 11, 2023.**  If Seamon fails to file an amended complaint, we will recommend that this case be dismissed.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge